PHYLLISTINE M. CUMMINGS, Employee-Plaintiff v. BURROUGHS WELLCOME COMPANY, Employer-Defendant; AETNA CASUALTY AND SURETY COMPANY, Carrier-Defendant

No. COA97-694

(Filed 7 July 1998)

**Workers' Compensation— change of condition—sufficiency of evidence**

The Industrial Commission erred by awarding additional compensation and additional medical treatment for plaintiff's back injury where the greater weight of the medical evidence does not show a causal link between plaintiff's current medical condition and the compensable injury in terms of reasonable medical probability. There is thus no evidence to support the Commission's findings that plaintiff has experienced a change of condition under N.C.G.S. § 97-47.

Appeal by defendants from opinion and award entered 3 April 1997 by the North Carolina Industrial Commission. Heard in the Court of Appeals 29 January 1998.

*Robert L. White for plaintiff-appellee.*

*Ward and Smith, P.A., by S. McKinley Gray, III and Catherine Ricks Piwowarski, for defendants-appellants.*

TIMMONS-GOODSON, Judge.

Defendants Burroughs Wellcome Company and Aetna Casualty & Surety Company appeal from an opinion and award entered by the Full Commission awarding plaintiff Phyllistine Cummings additional benefits based on a compensable change of condition. The pertinent facts are as follows.

On 5 February 1989, plaintiff suffered an injury to her back and hips, when a forklift struck her from behind and compressed her against a wall. On 13 November 1989, plaintiff filed a Form 18 alleg-

ing that she had sustained an injury in the course and scope of her employment with defendant-employer. Plaintiff later filed a Form 33 request for hearing, and the matter was heard by Deputy Commissioner Ford, who entered an opinion and award dated 23 December 1991 finding and concluding as follows: (1) that plaintiff sustained an injury by accident on 5 February 1989 arising out of and in the course of her employment with defendant-employer; (2) that plaintiff reached maximum medical improvement on 16 January 1990; (3) that plaintiff sustained a three percent permanent partial disability of the back; (4) that plaintiff sustained no demonstrative physical deficits and had missed nine and three-sevenths weeks from work; (5) that plaintiff earned greater wages upon her return to work after the injury than she had prior to the injury; and (6) that at the time of plaintiff's injury, her average weekly wage was $762.62.

On 2 January 1992, plaintiff appealed the deputy commissioner's opinion and award to the Full Commission, and on 4 November 1992, the Full Commission affirmed, adopting the deputy commissioner's opinion and award as its own. Plaintiff, then, appealed the Full Commission's opinion and award to this Court, and in an opinion filed 19 April 1994, this Court affirmed the Full Commission, finding competent evidence in the record to support the Commission's opinion and award.

On 21 September 1994, plaintiff filed a claim for additional compensation due to a substantial change of her medical condition, pursuant to North Carolina General Statutes section 97-47. Plaintiff also filed a claim for additional medical treatment, pursuant to section 97-25 of the General Statutes, on the grounds that her medical needs had changed as well. This new claim came on for hearing before Deputy Commissioner Bost on 26 January 1995, and on 17 January 1996, he filed an opinion and award finding and concluding as follows: (1) that plaintiff presented no medical evidence which would indicate that she is incapable of earning wages; (2) that plaintiff presented no medical evidence of a compensable change of condition; and (3) that plaintiff had not shown that her present complaints were related to her compensable injury of 5 February 1989. Plaintiff appealed this decision to the Full Commission, and in an opinion and award dated 3 April 1997, the Commission reversed the deputy commissioner's opinion and award. Defendants appeal.

---

The issue on appeal is whether the record supports the Commission's findings and conclusions that plaintiff has experienced

CUMMINGS v. BURROUGHS WELLCOME CO.

[130 N.C. App. 88 (1998)]

a change of condition as defined by North Carolina General Statutes section 97-47. Having carefully examined the record, we answer this question in the negative, and thus, reverse the Commission's opinion and award.

The law governing our review of an opinion and award entered by the Full Commission is clear. Our inquiry is limited to two questions: (1) whether there is any competent evidence in the record to support the Commission's findings of fact, and (2) whether the Commission's findings of fact, likewise, support its conclusions of law. *Simmons v. N.C. Dept. of Transp.*, 128 N.C. App. 402, 405-06, 496 S.E.2d 790, 793 (1998). If the record contains any evidence to support the Commission's findings of fact, they are binding on appeal, even if there is evidence to support contrary findings. *Hedrick v. PPG Industries*, 126 N.C. App. 354, 484 S.E.2d 853, *disc. review denied*, 346 N.C. 546, 488 S.E.2d 801 (1997). The Commission's conclusions of law, however, are fully reviewable. *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 491 S.E.2d 678 (1997), *disc. review denied*, 347 N.C. 671, —— S.E.2d —— (1998). "Whether the facts amount to a change of condition pursuant to N.C. Gen. Stat. § 97-47 is a 'question of law,'" and thus, is subject to de novo review. *Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 149, 468 S.E.2d 269, 274 (1996) (citing *Weaver v. Swedish Imports Maintenance, Inc.*, 319 N.C. 243, 247, 354 S.E.2d 477, 480 (1987)). With these principles in mind, we proceed with our analysis of defendants' arguments.

Defendants argue that the Commission's opinion and award was incorrect, because plaintiff has not shown that she suffered a change of condition. Specifically, defendants contend that plaintiff has failed to prove that her current complaints of neck, shoulder and arm pain are causally related to the 5 February 1989 injury to her back and hips. Defendants further contend that plaintiff has failed to show that the effect of the original, compensable injury has changed in any way. We agree.

Section 97-47 of the North Carolina General Statutes provides that upon the application of an interested party "on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded." N.C. Gen. Stat. § 97-47 (1991). A change of condition for purposes of section 97-47 means "'a substantial change, after final award of compensation, of physical capacity to earn[.]'" *Haponski v. Constructor's, Inc.*, 87 N.C.

App. 95, 104, 360 S.E.2d 109, 114 (1987) (quoting *McLean v. Roadway Express, Inc.*, 307 N.C. 99, 103-04, 296 S.E.2d 456, 459 (1982)). The change in earning capacity must be due to conditions different from those existing when the award was made. *Id.*

> This "change in condition" can consist of either a change in the claimant's physical condition that impacts his earning capacity, a change in the claimant's earning capacity even though claimant's physical condition remains unchanged, or a change in the degree of disability even though claimant's physical condition remains unchanged.

*Blair v. American Television & Communications Corp.*, 124 N.C. App. 420, 423, 477 S.E.2d 190, 192 (1996) (citations omitted). The party seeking to modify an award based on a change of condition bears the burden of proving that a new condition exists and that it is causally related to the injury upon which the award is based. *Id.* A claimant satisfies this burden by producing medical evidence establishing a link between the new condition and the prior compensable injury in terms of reasonable medical probability. *Grantham*, 127 N.C. App. at 534, 491 S.E.2d at 681. Testimony of an expert that is merely speculative or that raises no more than a mere possibility is not admissible as to the issue of causal relationship. *Lockwood v. McCaskill*, 262 N.C. 663, 669, 138 S.E.2d 541, 544-45 (1964); *see also Ballenger v. Burris Indus., Inc.*, 66 N.C. App. 556, 567, 311 S.E.2d 881, 887 (1984) (stating that an expert is not competent to testify regarding causal relation based on mere speculation or possibility). Furthermore, non-expert testimony suggesting a causal relationship is not a sufficient basis upon which to find causality. *Lockwood*, 262 N.C. at 666, 138 S.E.2d at 544.

In the instant case, the Commission made the following relevant findings regarding plaintiff's current medical condition:

> 8. According to Dr. Franklin, plaintiff sustained two falls during the week prior to January 4, 1993 due to the sudden buckling of her knees and thereafter *for the first time began to experience cervical pain radiating into the right arm*. Plaintiff's primary complaints to Dr. Franklin during January and July of 1994 were in the cervical area. (emphasis added).

> 9. Dr. J. Gregg Hardy of Eastern Carolina Neurological Association also evaluated plaintiff. He didn't find any objective neurological abnormalities that correlated specifically with plain-

tiff's pain. *He diagnosed fibromyositis but could not causally relate it to plaintiff's work injury. . . .* (emphasis added).

10. *Plaintiff's cervical pain was not causally related by objective medical evidence to her February 5, 1989 injury,* but Dr. Hardy testified that historically it may have been triggered by the original injury because plaintiff originally complained that she was "bruised all up and down her back." (emphasis added).

11. Plaintiff's Functional Capacity Assessment and vocational evaluation dated February 20, 1990, which was considered under the December 24, 1991 Opinion and Award, indicated that plaintiff was capable of performing in occupationals [sic] with light physical demands requiring the lifting of 20 pounds maximum and frequent lifting and carrying up to 10 pounds. Plaintiff had average reaching and handling ability, average fingering ability and average grip strength. It was recommended that plaintiff not return to her previous occupation as a chemical processor.

12. By comparison plaintiff's Functional Capacity Assessment dated April 14, 1993, found plaintiff to be functioning between the sedentary to light work categories. Plaintiff could lift 16.5 pounds occasionally. Plaintiff had below average grip, fingering and handling ability for the right and left hand. Plaintiff had low endurance and standing and walking increased the pain in her hip. It was recommended that if plaintiff returned to employment she should gradually increase working hours beginning at four hours a day to full time (or part time) work and that after walking plaintiff should be allowed to sit at least 10 minutes. It was also recommended that due to upper extremity pain, plaintiff's clerical job duties should be performed as tolerated.

. . .

14. Plaintiff has proven by the greater weight of the evidence that as of September 13, 1993 she was physically incapable of working light duty in her position as a technical training clerk. Plaintiff's incapacity to work and earn wages is caused by the pain in her lower back, the physical weakening of her right hip and leg resulting from the February 5, 1989 injury and from her unrelated cervical pain.

15. Although plaintiff's cervical and right upper extremity problems caused or aggravated by her falls also contribute to her incapacity to work, these falls which occurred in January, 1993 while

CUMMINGS v. BURROUGHS WELLCOME CO.

[130 N.C. App. 88 (1998)]

plaintiff had diminished wage earning capacity due to numerous days out of work as a result of her work related injury, were unintentional and did not break the causal connection between plaintiff's original injury and her disability.

16. As a result of her physical restrictions caused by her February 5, 1989 injury, plaintiff has, since September, 1993 been physically incapable of performing full time employment in a light category and has been incapable of earning wages in any employment.

17. Plaintiff has proven by the greater weight of the evidence that she has sustained a substantial change of condition since the entry of the prior Opinion and Award on December 23, 1991 by the Deputy Commissioner. Plaintiff is entitled to temporary total disability compensation beginning September 13, 1993 and continuing until further order of the Industrial Commission.

Based on these findings, the Commission awarded plaintiff additional temporary total disability compensation and additional medical expenses.

As previously noted, the Commission's findings of fact will not be disturbed on appeal if they are supported by any competent evidence of record. *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 342 S.E.2d 798 (1986). "Where, however, there is a complete lack of competent evidence in support of the findings they may be set aside." *Id.* at 432-33, 342 S.E.2d at 803. Such is appropriate in this case, as the record is completely devoid of any evidence that the condition resulting from plaintiff's 5 February 1989 injury has changed.

First, the Commission concedes that there is no causal connection between plaintiff's current complaints of cervical pain and her 5 February 1989 injury. Furthermore, regarding the current status of plaintiff's original injury, plaintiff's treating physician, Dr. Robert C. Franklin, testified as follows:

Q: The lower back pain and hip pain, has that really changed since you first started seeing her?

A: From 1989, I think it probably has that in that when I last saw her she was using a cane to be able to get around with. Of course, my impression with seeing her now, I know that she has chronic pain whereas when I saw her back in February 1989, my presumption was completely different because it was more acute,

and I was really hoping that this—hoping and expecting that this would be something that would go ahead and get better. As far as if the intensity of the pain is the same, worse, or not as bad, I don't know about that.

Q: I guess the answer would be that you don't know whether there has been a change in her condition?

A: I don't know.

Q: Just in talking about the lower?

A: Just the lower back.

Q: Yes.

A: I cannot say that the lower back pain has gotten better. I think that would be fair to say.

Q: Can you say the lower back pain has gotten worse?

A: No. I wouldn't be able to say that.

Plaintiff's other physician, Dr. J. Gregg Hardy, testified similarly concerning the cause of her current condition:

Q: Can you state to a reasonable degree of medical certainty the cause of the pain that she came in complaining about on March 8, 1993?

A: No. I don't think that I can. I can draw some circumstantial conclusions—that historically it may have been triggered by her original injury; but having not seen her for what, four years afterwards, it was based purely on history.

In light of this testimony, we conclude that the greater weight of the medical evidence does not show a causal link between plaintiff's current medical condition and the 5 February 1989 compensable injury in terms of reasonable medical probability. Thus, there is no evidence to support the Commission's findings that plaintiff has experienced a change of condition under section 97-47 of our General Statutes. Accordingly, the Commission's award of additional compensation and additional medical treatment is reversed.

Reversed.

Judges LEWIS and McGEE concur.